[Civ. No. 11147. Third Dist. Dec. 1, 1965.]

MORTON L. JANET, Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION, BROWN DRILLING CO., et al., Respondents.

Charles R. Herman for Petitioner.

Everett A. Corten, Charles W. Decker and Hanna & Brophy for Respondents.

PIERCE, P. J.—This is a petition for a writ of review sought by an employee after a reconsideration had been denied by the Industrial Accident Commission of an award granted.

Petitioner's contentions are several: (1) That the commission's grant of temporary total disability (for the period from November 28, 1960, through October 16, 1961, and from May 28, 1962, through October 17, 1962) should have included the intervening gap. (We sustain this contention for reasons hereinafter to be developed.) (2) That the permanent rating granted by the commission (41 per cent) is inadequate. (3) That various acts of fraud and other irregularities were committed by the commission and its referees and by representatives of the insurer. (We reject contentions (2) and (3). Substantial evidence supports the commission's permanent rating award. We find no fraud or other irregularities.)

On November 27, 1960, petitioner suffered an industrial injury to his stomach, back, legs and chest when a derrick board fell upon him. He was given medical treatment and total temporary disability payments until October 16, 1961. At or about that time surgery (a laminectomy) was recommended. Petitioner refused to submit thereto. Because of that refusal attending physicians expressed the opinion that without such surgery petitioner's condition should be considered to be permanent and stationary and recommended a permanent rating be given. On December 19, 1961, petitioner applied for medical care and further total temporary disability.

Applicant thereafter was examined by an orthopedist of his own selection whose report of June 7, 1962, suggested a "high volume type of myelogram." The report also expressed the opinion that petitioner suffered "quite a lot of disability." The myelogram recommended was performed September 26, 1962. The myelogram was negative and the doctor recommended that the case be closed.

In the meantime the referee (without benefit of or regard to the later myelogram) had recommended a permanent disability rating "based upon the expected residual following surgery which applicant refuses to accept." Accordingly, petitioner was given a permanent rating on this basis—30½ per cent. But after the orthopedist's myelogram of September 26, 1962, the case was again referred to the commission's disability rating bureau, the referee describing the factors of disability as "Impairment of the low back and right leg function, incapacitating for heavy work or work requiring long hours on feet." Nothing was said regarding any "residual following surgery." The rating expert deemed the disability,

as described, to constitute somewhat more than slight impairment of the spine and thus assigned a standard rating which when adjusted for age and occupation was 41 per cent.

On December 19, 1962, petitioner, objecting to this rating, requested further temporary compensation, further medical treatment and compensation for self-procured medical treatment. Apparently, no hearing was held on this petition (although a notice of hearing was given). On December 28, 1962, the employer's insurance carrier requested a release by petitioner of United States Veterans Administration records on petitioner regarding a 100 per cent disability rating claimed by petitioner to have been made by it. Release of this information was refused upon the ground it was confidential.

On June 24, 1963, applicant again petitioned for a hearing for temporary compensation, medical treatment and reimbursement for self-procured medical treatment. The following incidents occurred thereafter: Counsel for the insurance carrier objected to any hearing until the previously requested information from the Veterans Administration was released; the referee's written query to petitioner's counsel in this regard elicited a response which conditioned release upon the holding of a hearing pursuant to the petition of June 24, 1963; it also contained a refusal to submit to further medical examinations. (This caused a cancellation of examinations scheduled.) The matter was then ordered off calendar.

In September 1963 counsel for both parties suggested, and the commission directed, a further medical examination by a neurologist which was held. This physician reported "no current objective neurological abnormalities" but recommended an orthopedic examination. Meanwhile petitioner's counsel asked that the provisions of Labor Code section 5814 for a 10 per cent penalty for "unreasonable delay" be invoked. The commission appointed another orthopedic surgeon to examine petitioner. Petitioner did not appear for the examination and his counsel dispatched a letter expressing unwillingness to submit to further examinations until findings upon his previous petitions were made. The referee concluded petitioner's refusal was unreasonable and recommended an order suspending petitioner's right to maintain compensation proceedings. Such suspension was ordered February 26, 1964. After this a series of telegrams were sent by petitioner to the chairman of the commission. The referee who had been handling the matter disqualified himself and the proceedings were assigned to another referee. The latter suggested a

further hearing. On May 26, 1964, the chairman of the commission suggested a psychiatric examination, and after considerable further time lost in an apparent attempt by counsel to agree upon a physician to conduct that examination, petitioner again refused to submit to any further examinations.

Finally, on September 15, 1964, the matter was submitted on the record as it stood and an award was made. This included the temporary total and permanent disability allowances as indicated above, and denied petitioner's demand for a penalty allowance based upon the contention that an unreasonable delay had occurred. (It also made allowances for unpaid medical fees, attorneys fees and incidental allowances not here involved.)

Re: *The Finding that Petitioner was not Entitled to Temporary Total Disability between October 17, 1961, and May 27, 1962.*

█ The refusal of the referee to recommend, and of the commission to award, temporary total disability during the period noted is based upon the fact that on October 16, 1961, a physician had recommended surgery which petitioner refused to submit to and which subsequent undisputed findings proved would have been useless. The finding that the aggregate period of total temporary disability was from the date of the accident, November 27, 1960, to October 1962, is undisputed. The question therefore reduced to simplest terms is whether a petitioner can be penalized for refusal to undergo unnecessary surgery. The question seems to answer itself.

█ An award of temporary compensation cannot be *given* to a person merely because he is cooperating. An award for an industrial accident can be given only for disability. (Lab. Code, §§ 4650, 4653 and 4661.) Disability payments are a blend of two ingredients, physical impairment and inability to earn wages. (2 Larson, Workmen's Compensation Law, § 57.10, p. 2; *State of California* v. *Industrial Acc. Com.*, 135 Cal.App.2d 544, 550 [288 P.2d 31].) There was no evidence that the condition was any different during the gap between the two periods for which an award was made for temporary total disability.

█ The question whether a refusal to submit to surgery terminates a right to receive further compensation turns upon whether the refusal is reasonable. (1 Larson, Workmen's Compensation Law, § 13.22, p. 192.88.) That author states that "reasonableness" partially depends upon the risk involved in the surgery to be performed. █ The surgery

here proposed was a laminectomy. According to Webster's Third New International Dictionary (1965), a laminectomy is the "surgical removal of the posterior arch of a vertebra." No portion of the record to which we have been referred tells us whether that is minor or major surgery. We suspect it falls within the latter category. We cannot, and need not, decide that question. The process of determining "reasonableness" is one of weighing the risk against the result. (1 Larson, *op. cit. supra*, at p. 192.91.) Since the record shows here there would have been no aid to a cure, there is nothing to weigh against *whatever* risk the surgery may have entailed. The record demonstrates petitioner did not—in this regard—act unreasonably. In fact, one report of the referee states he felt petitioner's refusal to submit to surgery was not unreasonable. The award for total temporary disability must therefore be increased to include the period omitted as indicated.

### Re: *The Contention that a Permanent Disability Rating of 41 Per Cent was too Low.*

Although a number of arguments have been advanced by petitioner as to why the permanent disability rating award to him is too low, his two principal ones seem to be (1) that it was based upon the original rating recommended as one constituting a residual following the very surgery which was later ascertained to be useless and unnecessary, and (2) it is contended that since a disability of 100 per cent seems to have been made by the Veterans Administration, petitioner is entitled ipso facto to the same rating here.

The answer to both of these contentions is that the record contains substantial evidence refuting petitioner's contentions. The original rating recommended by the commission's rating bureau *was* based upon "expected residual following surgery which applicant refuses to accept." But that recommendation was made August 7, 1962. In November 1962 an increased rating was made. The second rating was based upon factors which we have quoted above and these are not based upon a residual following surgery. The second referee's report and the commission's decision were both based upon the latter rating. In fact, said report asserts that it was based "upon the entire file" and includes an outline of the reasons of the referee for reaching such determination.[1] These asserted reasons are based upon substantial evidence.

---

[1] ". . . It is my considered opinion that applicant's back disability, together with the radiating leg pain which precludes applicant from

█ Percentage of disability is a question of fact and the commission's determination of this fact founded upon substantial evidence is binding upon a reviewing court. (*New Amsterdam Cas. Co.* v. *Industrial Acc. Com.*, 108 Cal.App.2d 502, 504 [238 P.2d 1046].)

> Re: *The Contention that the Commission Deprived Petitioner of due Process by Failing to Make its Decision within 30 days and that Other Acts of Fraud were Committed.*

█ Petitioner also charges that he was deprived of "due process" and prejudiced because the commission's decision was not made within 30 days.

The case was pending a long time. Labor Code section 5313 provides that decisions must be made within 30 days after their submission. Section 5800.5 declares this provision to be mandatory. The foregoing review of the steps of this proceeding, however, demonstrate quite forcibly that many, if not most, of the delays were attributable to acts of petitioner. For those delays which were not his responsibility he was not without a remedy. That remedy was by petition for a writ of mandamus. The delays did not cause the commission to lose jurisdiction. (*Liberty Mut. Ins. Co.* v. *Industrial Acc. Com.*, 231 Cal.App.2d 501, 509-510 [42 Cal.Rptr. 58].) Because petitioner's unusual behavior was responsible for much of the delay, the commission was also justified in refusing to apply the penalty provisions of Labor Code section 5814.

█ The alleged fraudulent acts to which petitioner alludes include *inter alia* (1) the impropriety of the direction to him by the referee to release his file with the Veterans Administration, and (2) discussion of the case by a representative of the insurer with a rating expert. We find no substance in these charges. Petitioner himself *now* urges that the commission *should have accepted the Veterans Administration appraisal of the extent of his disability.* It could not have done so, of course, without examining it to ascertain upon what the ap-

---

performing heavy work or work which requires long standing, is properly evaluated in the recommended permanent disability rating of November 26, 1962, said rating being 35% standard which, when adjusted for age and occupation, amounts to 41% disability. All of the doctors who examined applicant, including his own physician, Dr. Hook, indicate surgery might relieve applicant from some of his present disability. However, applicant still refused to submit to such surgery, and I feel his refusal is not unreasonable. Applicant's other subjective complains [*sic*] are, in my opinion, not attributable to the injury herein, and therefore, after apportionment I am satisfied a 41% permanent disability rating is fair and proper under all these circumstances."

praisal was based. Petitioner should commend, not condemn, the referee's efforts to find out.

█ As to the conversations by the insurer's representative with the rating expert, absent some privilege, witnesses are not inaccessible to either party. " 'It would be a most unfortunate condition of affairs if a party to a suit, civil or criminal, should be permitted to monopolize the sources of evidence. . . .' " (*Walker* v. *Superior Court,* 155 Cal.App.2d 134, 140 [317 P.2d 130].) Rating specialists of the rating bureau of the commission are potential expert witnesses who may be examined and cross-examined. Their reports are not confidential. (*Young* v. *Industrial Acc. Com.,* 38 Cal.App.2d 250, 257 [100 P.2d 1062]; *Roberson* v. *Industrial Acc. Com.,* 146 Cal.App.2d 627 [304 P.2d 202].) There was no impropriety in the conversation objected to.

That portion of the award finding temporary disability payments is remanded to the commission with directions to enter an order conforming to this opinion. The award is otherwise affirmed.

Friedman, J., and Regan, J., concurred.

A petition for a rehearing was denied December 28, 1965, and petitioner's application for a hearing by the Supreme Court was denied January 26, 1966.