[No. B141876. Second Dist., Div. One. Mar. 14, 2001.]

DANIEL ORDORICA, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD and LANCE
CAMPERS MANUFACTURING CORPORATION, Respondents.

## COUNSEL

Allan H. Cutler for Petitioner.

No appearance for Respondent Workers' Compensation Appeals Board.

Clopton, Penny & Brenner, Robert C. Nichols, Ronald R. Kollitz; Tobin Lucks and Deborah T. Czech for Respondent Lance Campers Manufacturing Corporation.

## OPINION

ORTEGA, J.—During the initial 30-day period of medical control by the employer following an industrial injury, Daniel Ordorica refused care by the employer's doctor and instead began treatment with a physician he chose. The Workers' Compensation Appeals Board (WCAB) determined that Ordorica's refusal and change of physicians was an illegal and deliberate attempt to deny the employer its right of medical control, and Ordorica was estopped from asserting his physician was the primary treating physician (PTP).[1] In addition, the WCAB extended the employer's medical control to two days after a future examination with the employer's physician.

[1] California Code of Regulations, title 8, (hereafter Title 8) section 9785, subdivision (a) states in relevant part, "The ' "primary treating physician" ' is the physician who is primarily responsible for managing the care of an injured employee, and who has examined the employee at least once for the purpose of rendering or prescribing treatment and has monitored the effect of the treatment thereafter. The primary treating physician is the physician selected by the employer or the employee pursuant to Article 2 (commencing with Section 4600) of Chapter 2 of Part 2 of Division 4 of the Labor Code, or under the contract

Ordorica as petitioner alleges he had no legal obligation to accept treatment from the employer's physician, and he mistakenly scheduled an appointment with his treating doctor during the period of the employer's medical control. Ordorica further contends the relief afforded by the WCAB is not provided by statute. The employer answers its right to medical control was violated and the decision is justified.

Although initially we summarily denied the petition for writ of review, the Supreme Court granted review and ordered hearing of the matter by this court. We find that Ordorica violated the employer's right to control medical treatment, but agree that the WCAB's remedy exceeds the law. Accordingly, the decision is affirmed only in part, and the matter is remanded for further proceedings consistent with this opinion.

## FACTUAL AND PROCEDURAL BACKGROUND

Daniel Ordorica, a motor home assembler/pipe installer for Lance Campers Manufacturing Corporation, claimed he injured his head, neck, back, both upper extremities, and his psyche on February 4, 1999, when he was struck at work by a sheet of wood.

The same day Lance Campers referred Ordorica to Daniel Mongiano, M.D., who diagnosed a wound to the forehead which required sutures. Ordorica claims he told Dr. Mongiano he had injured his neck and back as well, but the doctor found the complaints unrelated. Pursuant to company policy, Dr. Mongiano also conducted a drug test, which was positive for marijuana.

Ordorica subsequently returned to Dr. Mongiano to have the stitches removed, but the doctor was not in. He informed the receptionist he had to leave to pay some bills and was told the doctor would be in the office when he returned. When Ordorica returned the office was closed. Ordorica then removed the stitches himself.

On or about February 20, 1999, Ordorica retained his current counsel, Allan H. Cutler. In a letter dated February 22, 1999, Cutler wrote Lance Campers of the representation and that Ordorica was "unhappy with his present medical care and is making a demand to change Primary Treating Physician within five days." In a separate letter, Cutler stated that Ordorica had chosen Ronald Perelman, M.D., as the PTP pursuant to Labor Code

---

or procedures applicable to a Health Care Organization certified under section 4600.5 of the Labor Code."

sections 4600[2] and 4601.[3] Generally, section 4600 provides for medical control of treatment by the employer for the first 30 days following an industrial injury, while the employee has the right to select his or her own physician after the 30-day period. (*Ralphs Grocery Co. v. Workers' Comp. Appeals Bd.* (1995) 38 Cal.App.4th 820 [45 Cal.Rptr.2d 197].) However, if an employer fails to provide appropriate treatment as required, an employee may be entitled to self-procured medical care. (*McCoy v. Industrial Acc. Com.* (1966) 64 Cal.2d 82 [48 Cal.Rptr. 858, 410 P.2d 362].) In addition, section 4601 permits at any time a one-time change of physicians to be provided by the employer within five working days of the employee's request. (*Ralphs Grocery Co. v. Workers' Comp. Appeals Bd., supra,* 38 Cal.App.4th at pp. 826-829.)

In a third letter, Cutler confirmed that an appointment had been set with Dr. Perelman for March 5, 1999. These letters were also faxed to Lance Campers on February 23, 1999.

By letter of February 25, 1999, faxed to Cutler, Lance Campers acknowledged receiving the February 23, 1999, fax. Lance Campers also gave notice that it had designated G.B. Ha'Eri, M.D., as the new PTP, and an appointment had been scheduled for Ordorica on March 2, 1999.

In a separate letter of the same date, Lance Campers asked whether Ordorica would attend the appointment with Dr. Ha'Eri since Cutler had responded that Dr. Perelman was selected as PTP. Lance Campers further stated that medical control of treatment within the 30-day period continued by providing the appointment with Dr. Ha'Eri within five days, and attendance was mandatory.

---

[2]Labor Code section 4600 in relevant part states, "Medical, surgical, chiropractic, acupuncture, and hospital treatment, . . . that is reasonably required to cure or relieve from the effects of the injury shall be provided by the employer. In the case of his or her neglect or refusal seasonably to do so, the employer is liable for the reasonable expense incurred by or on behalf of the employee in providing treatment. After 30 days from the date the injury is reported, the employee may be treated by a physician of his or her own choice or at a facility of his or her own choice within a reasonable geographic area. . . . If an employee requests a change of physician pursuant to Section 4601, the request may be made at any time after the injury, and the alternative physician . . . shall be provided within five days of the request as required by Section 4601. . . ."

All further statutory references are to the Labor Code unless stated otherwise.

[3]Section 4601, subdivision (a), states in relevant part, "If the employee so requests, the employer shall tender the employee one change of physician. The employee at any time may request that the employer tender this one-time change of physician. Upon request of the employee for a change of physician, the maximum amount of time permitted by law for the employer or insurance carrier to provide the employee an alternative physician . . . shall be five working days from the date of the request. Notwithstanding the 30-day time period specified in Section 4600, a request for a change of physician pursuant to this section may be made at any time. . . ."

Meanwhile, Dr. Mongiano issued a report signed on February 26, 1999, with a copy to Dr. Ha'Eri, that Ordorica was declared permanent and stationary[4] and released from further medical care because he had not returned for treatment.

Ordorica failed to attend the March 2, 1999, appointment with Dr. Ha'Eri. Lance Campers then informed Ordorica his claim was denied. On March 5, 1999, Ordorica initiated treatment with Dr. Perelman, which included therapy for the spine.

Ordorica was finally evaluated by Dr. Ha'Eri on June 21, 1999. Dr. Ha'Eri diagnosed a concussion and forehead laceration which had been sutured and healed. Dr. Ha'Eri further concluded Ordorica was permanent and stationary, had no residual disability, and required no work restrictions or future medical care.

In addition, Dr. Ha'Eri noted that X-rays showed a mild compression fracture of the spine at L1. However, Dr. Ha'Eri concluded the compression fracture was not work-related because Ordorica had instead hyperextended his spine in the industrial injury. The compression fracture was caused by more forceful flexion, or flexion and rotation.

In deposition, Ordorica testified he never received notice of the March 2, 1999, appointment with Dr. Ha'Eri. When he subsequently received the denial letter from Lance Campers, Ordorica called Cutler's office and was told, " 'I didn't want you to go to that doctor. You are going to my doctor.' "

At trial Lance Campers admitted injury to the head but denied the upper extremities, neck, back and psyche. The issues submitted for decision were limited to whether Ordorica could designate Dr. Perelman as PTP or was estopped, and deposition attorney fees.

This time Ordorica testified he was advised he did not have to go to Dr. Ha'Eri for treatment, and could choose to wait and see Dr. Perelman three days later. He added that he lost confidence in the company doctors because he was denied back treatment, the stitches were not removed, and he was tested for drugs although he did not cause the accident.

The workers' compensation judge (WCJ) found that Ordorica's failure to keep the March 2, 1999, appointment with Dr. Ha'Eri was in bad faith, and an illegal attempt to deny Lance Campers' right to control medical treatment during the first 30 days following the industrial injury. Consequently,

---

[4]Permanent and stationary status can be defined as "after the employee has reached maximum medical improvement or his or her condition has been stationary for a reasonable period of time." (Tit. 8, § 10152.)

Ordorica was estopped to declare Dr. Perelman as PTP, and Lance Campers' right to control medical treatment was extended until two days following an examination to be scheduled with Dr. Ha'Eri. The WCJ also denied the deposition attorney fees.

In the opinion on decision, the WCJ explained Ordorica and Cutler were informed by letter Lance Campers was maintaining its right to medical control of treatment with Dr. Ha'Eri. In addition, the record showed Cutler intended to secure the right before the 30-day period expired as indicated by the appointment being set with Dr. Perelman. As a result, Dr. Ha'Eri remained PTP.

Ordorica filed for reconsideration with the WCAB. Ordorica pointed out section 3202[5] required liberal construction of the facts and law as set forth in *Arriaga v. County of Alameda* (1995) 9 Cal.4th 1055, 1065 [40 Cal.Rptr.2d 116, 892 P.2d 150].

Ordorica further alleged the interference with Lance Campers' right of medical control during the first 30 days was inadvertent. Ordorica claimed the appointment with Dr. Perelman was mistakenly set within the 30-day period because it was overlooked that February contained only 28 days, and March 5, 1999, was actually the 29th day.

Furthermore, Ordorica had not been instructed to miss the appointment with Dr. Ha'Eri. Instead, Cutler, who had been practicing for 20 years without discipline by the State Bar and was a certified specialist in workers' compensation, advised Ordorica he was free to reject medical care from Lance Campers since sections 4050 to 4054[6] are inapplicable to treatment, and section 4056[7] was never raised.

According to Cutler, legal alternatives are self-treatment, paying for alternative treatment or waiting for the employer's period of medical control to

---

[5]Section 3202 states, "This division and Division 5 (commencing with Section 6300) shall be liberally construed by the courts with the purpose of extending their benefits for the protection of persons injured in the course of their employment."

[6]Section 4050 in relevant part states, "Whenever the right to compensation under this division exists in favor of an employee, he shall, upon the written request of his employer, submit at reasonable intervals to examination by a practicing physician, provided and paid for by the employer . . ."

If an employee refuses or fails to submit to the examination under section 4050, the collection of compensation and the right to disability payments during such period is suspended. (§§ 4053, 4054.)

[7]Under section 4056, "No compensation is payable . . . when . . . disability is caused, continued, or aggravated, by an unreasonable refusal to submit to medical treatment, or to any surgical treatment, if the risk of the treatment is . . . inconsiderable in view of the seriousness of the injury."

expire. Since testimony at trial confirmed there were good reasons to avoid treatment with Lance Campers' physicians, Ordorica decided to wait and treat with Dr. Perelman. Even if missing the initial appointment with Dr. Ha'Eri was viewed as a deliberate deprival of Lance Campers' right to medical control, there was no authority for rejecting Ordorica's choice of Dr. Perelman as PTP, or to extend Lance Campers' right of control indefinitely.

In the report on reconsideration the WCJ pointed out the employer's right to medical control during the first 30 days is well established under sections 4600 and 4601, and *Zeeb v. Workmen's Comp. App. Bd.* (1967) 67 Cal.2d 496 [62 Cal.Rptr. 753, 432 P.2d 361]. In *Zeeb* the Supreme Court determined that the employer's right to medical control under section 4600 cannot be revived when treatment is denied and the employee self-procures, absent a change in condition or evidence of deficient treatment. The WCJ added that the right to medical control is of major importance because the PTP's opinion may be entitled to the rebuttable presumption of correctness under section 4062.9.[8]

The WCJ further reasoned that although Lance Campers had timely arranged the appointment with Dr. Ha'Eri under section 4601, which was still within the first 30 days of medical control under section 4600, all of which was communicated to counsel, Cutler nevertheless arranged treatment with Dr. Perelman during this period. The WCJ also concluded that Cutler's claim in the petition for reconsideration that no instructions were given to disregard the appointment with Dr. Ha'Eri was not evidence.

In addition, the WCJ noted that under Title 8, section 9785, subdivision (b),[9] there could be only one PTP at a time. Since Ordorica had not been released by the new PTP timely designated by Lance Campers, and in order to restore the parties to the status quo ante, Ordorica was estopped from designating Dr. Perelman as PTP and employer control over medical treatment was extended two days beyond an examination to be scheduled with Dr. Ha'Eri.

---

[8]Section 4062.9, operative only for injuries after January 1, 1994, states that, "In cases where an additional comprehensive medical evaluation is obtained under Section 4061 or 4062, the findings of the treating physician are presumed to be correct. This presumption is rebuttable and may be controverted by a preponderance of medical opinion indicating a[ ] different level of impairment. However, this presumption shall not apply where both parties select qualified medical examiners."

[9]Title 8, section 9785, subdivision (b) states in relevant part, "There shall be no more than one primary treating physician at a time. Where the primary treating physician discharges the employee from further treatment and there is a dispute concerning the need for continuing treatment, no other primary treating physician shall be identified unless and until the dispute is resolved. If it is determined that there is no further need for continuing treatment, then the physician who discharged the employee shall remain the primary treating physician. If it is determined that there is need for continuing treatment, a new primary treating physician may be selected."

The WCAB, in a two-to-one decision, agreed with the WCJ and denied reconsideration. In its recitation of the facts, the majority noted that although Ordorica testified to reasons why he objected to Dr. Mongiano, a similar basis was not established for Dr. Ha'Eri.

The majority further questioned whether Ordorica's treatment with Dr. Perelman was reasonable or compensable considering *Janet v. Industrial Acc. Com.* (1965) 238 Cal.App.2d 491 [47 Cal.Rptr. 829]. In *Janet* the court reversed denial of compensation following the injured worker's refusal of a laminectomy, because further testing revealed the refusal was reasonable.

The WCAB majority found that regardless of Cutler's advice, the appointment with Dr. Ha'Eri was mandatory even though treatment could be rejected. In addition, based on the evidence which did not include Cutler's testimony, Ordorica's refusal was deliberate.

The dissent concluded the matter should be remanded to determine whether Ordorica or the WCJ had the right to designate the PTP. Although loss of compensation results from abrogation of Lance Campers' right of medical control, no legal basis was stated, under section 4050 or otherwise, for replacing Dr. Perelman as PTP with Dr. Ha'Eri.

Ordorica petitioned for writ of review, incorporating his petition for reconsideration. Ordorica adds he misunderstood the questions at his deposition, and clarified counsel's advice at trial. Ordorica said he doubted Dr. Ha'Eri for the same reasons he mistrusted Dr. Mangiano. Ordorica argued there is no law or case mandating attendance or treatment with Dr. Ha'Eri.

Ordorica also distinguishes *Janet* as applying to a time when an employer had continuous control of treatment which was changed to the first 30 days in 1976. He says there were legitimate reasons to reject Dr. Ha'Eri, and the issue is not liability for doctor bills or whether compensation is owed. Ordorica further asserts there is no statute or case law, including sections 4050 to 4056, which provide for changing PTP status a year later.

Lance Camper answers Ordorica was obligated to attend the March 2, 1999, appointment with Dr. Ha'Eri under section 4600, which was further violated by the March 5, 1999, appointment with Dr. Perelman. Thus, there was good cause to estop Ordorica from asserting Dr. Perelman as PTP, especially considering Title 8, section 9785, subdivision (b).

DISCUSSION

## I. Substantial Evidence Supports the Factual Findings.

██ If substantial evidence supports the factual findings which are disputed, the reviewing court normally is precluded from exercising its independent judgment on the evidence. (*Braewood Convalescent Hospital v. Workers' Comp. Appeals Bd.* (1983) 34 Cal.3d 159, 164 [193 Cal.Rptr. 157, 666 P.2d 14].) This rule applies notwithstanding liberal construction. Generally, the court must also accept factual findings which are undisputed, uncontradicted or unimpeached. (*Garza v. Workmen's Comp. App. Bd.* (1970) 3 Cal.3d 312 [90 Cal.Rptr. 355, 475 P.2d 451]; *LeVesque v. Workmen's Comp. App. Bd.* (1970) 1 Cal.3d 627, 639 [83 Cal.Rptr. 208, 463 P.2d 432].)

In this case, it is conceded Lance Campers exercised medical control of treatment following the industrial injury. Ordorica challenged the treatment under section 4600, allegedly for not providing back treatment or removal of the stitches, and for requiring drug testing. ██ When proper treatment for an industrial injury is not provided by the employer during its medical control, an injured worker can self-procure and seek reimbursement. (*Zeeb v. Workmen's Comp. App. Bd., supra,* 67 Cal.2d at pp. 502-503; *McCoy v. Industrial Acc. Com., supra,* 64 Cal.2d at p. 87.)

██ However, the WCJ and WCAB majority determined this was not the actual basis for Ordorica's change of physicians. Instead, Ordorica's actions were viewed as deliberate attempts to deny Lance Campers its legitimate right of medical control in order to gain legal advantage, i.e., the presumption of correctness under section 4062.9.

Substantial evidence exists to support this conclusion. From the very beginning of representation by experienced counsel, an appointment with Dr. Perelman was routinely scheduled, which was during the period of Lance Campers' medical control. Ordorica also rejected Dr. Ha'Eri, whom he had never seen. Nor was Dr. Perelman's appointment rescheduled when notice was given by Lance Campers that its right of medical control was being violated.

In addition, Ordorica testified in deposition he was told not to go to Lance Campers' doctors. Even the WCAB dissent acknowledged Lance Campers' right of medical control was abrogated.

The same conclusion is reached regarding section 4601. There is no dispute Lance Campers timely complied with Ordorica's request for a

change of physicians within five working days,[10] while demanding compliance with its right of medical control. Even so, Ordorica, with the advice of able counsel, failed to go to Dr. Ha'Eri, and began treatment with Dr. Perelman when he knew, or should have known, he lacked medical control.

Cutler's office, obviously intending to take medical control of treatment but allegedly not during the first 30 days following the industrial injury, conceivably could have mistakenly set the appointment with Dr. Perelman for March 5, 1999, considering the date of injury was February 4, 1999, and February contained only 28 days. But the WCJ and WCAB majority determined otherwise, which binds this court, since the finding is supported by substantial evidence. With the facts thus established, the law is applied de novo by the reviewing court. (*Granco Steel, Inc. v. Workmen's Comp. App. Bd.* (1968) 68 Cal.2d 191, 196-197 [65 Cal.Rptr. 287, 436 P.2d 287]; *Gonzalez v. Workers' Comp. Appeals Bd.* (1996) 46 Cal.App.4th 1584, 1593 [54 Cal.Rptr.2d 308].)

## II. *Ordorica Violated Sections 4600 and 4601.*

Ordorica alleges sections 4600 and 4601 were not violated because he was not legally obligated to accept treatment tendered by Lance Campers or attend the appointment with Dr. Ha'Eri. Ordorica further contends he has the option of caring for himself, paying for treatment, or waiting until the 30-day period of employer medical control has passed.

If an injured worker reasonably declines treatment provided by an employer, the right to receive further compensation[11] remains. (*Zeeb v. Workmen's Comp. App. Bd., supra,* 67 Cal.2d at pp. 502-503; *Janet v. Industrial Acc. Com., supra,* 238 Cal.App.2d at pp. 495-496.) Conversely, compensation is not payable when disability is caused, continued or aggravated by an unreasonable refusal to submit to medical treatment. (§ 4056; see also *Thompson v. Workers' Comp. Appeals Bd.* (1994) 25 Cal.App.4th 1781, 1785-1786 [31 Cal.Rptr.2d 242].) It appears the law does allow an

---

[10]It is noted that by enactment in 1971, section 4601 provided for a one-time change of physicians, and 12 days was the maximum time permitted to nominate at least five alternatives. When the statutory change to five working days and one alternative occurred in 1975, the word nominate was also replaced with the word "provide." We interpret this to mean that the time-frame of the statute is still satisfied when an alternative physician is designated within five working days of the request, even if the appointment is beyond the five days. (See also *U.S. Flowers v. Workers' Comp. Appeals Bd.* (1997) 62 Cal.Comp.Cases 244.) However, in this case, Dr. Ha'Eri was designated and scheduled to see Ordorica within five working days.

[11]According to section 3207, "[c]ompensation means compensation under Division 4 and includes every benefit or payment conferred by Division 4 upon an injured employee . . . ." It is noted that sections 4600 and 4601 are in division 4 of the Labor Code.

injured worker certain choices with regards to medical treatment, which arguably supports Cutler's claim that Ordorica was advised as stated at trial.

 However, in this case Dr. Perelman provided treatment, payment is not in issue, and Ordorica did not wait until Lance Campers' right of medical control expired. Instead, Ordorica began treatment with Dr. Perelman during the 30-day period prohibited by section 4600, whether intentional or otherwise. Liberal construction of the law does not change this result. Had Ordorica waited and not infringed on Lance Campers' right of medical control, the outcome may have been different. Furthermore, Ordorica asked for a change of physicians under section 4601, but the request was determined to be legal subterfuge.

### III. The Remedy.

#### 1. The Elements of Estoppel Were Not Established

The WCJ and WCAB majority apparently attempted to apply equitable estoppel in fashioning relief. Equitable estoppel, which has been applied in a variety of situations in workers' compensation, requires that the party asserting the estoppel must have been ignorant of the facts, and must have detrimentally relied upon the words or conduct of the adverse party. (*Hurwitz v. Workers' Comp. Appeals Bd.* (1979) 97 Cal.App.3d 854, 874 [158 Cal.Rptr. 914]; see also *McCarty v. Workmen's Comp. Appeals Bd.* (1974) 12 Cal.3d 677, 685 [117 Cal.Rptr. 65, 527 P.2d 617] and *Maples v. Workers' Comp. Appeals Bd.* (1980) 111 Cal.App.3d 827, 837-839 [168 Cal.Rptr. 884].) In this case, there was no finding Lance Campers was ignorant of the relevant facts and detrimentally relied upon the words or conduct of Ordorica.

Nor do the circumstances support judicial estoppel. Judicial estoppel involves taking inconsistent positions in separate judicial proceedings. (*Drain v. Betz Laboratories, Inc.* (1999) 69 Cal.App.4th 950, 957 [81 Cal.Rptr.2d 864].) Here, only a single proceeding is involved.

Accordingly, estoppel has not been established as a remedy in this case.

#### 2. The Appropriate Relief

This does not mean Lance Campers is without a remedy. Medical control remained with Lance Campers when Ordorica illegally attempted to select Dr. Perelman as PTP and treatment began. There also can be only one PTP at a time under Title 8, section 9785, subdivision (b). Dr. Ha'Eri thus retained PTP status.

This status continued until Ordorica's discharge by Dr. Ha'Eri, which occurred on June 21, 1999, because Dr. Perelman never became PTP pursuant to law. (*Tenet/Centinela Hospital Medical Center v. Workers' Comp. Appeals Bd.* (2000) 80 Cal.App.4th 1041 [95 Cal.Rptr.2d 858].) *Tenet/Centinela* held in part that PTP status is retained when another PTP is designated after discharge from treatment contrary to the statutory scheme set forth in section 4060 et seq. and Title 8, section 9785, subdivision (b).[12] Thus, Ordorica is obligated to follow the procedures of section 4060 et seq. in order to challenge the findings of Dr. Ha'Eri. (*Tenet/Centinela,* at p. 1048.) This is only just, since it was determined that Ordorica attempted to manipulate the statutory scheme.

Nothing in our opinion precludes Ordorica from seeking a determination whether the procedures under section 4060 et seq. were followed after the discharge by Dr. Ha'Eri, or whether such procedures can still be initiated. We express no opinion regarding the outcome should Ordorica so proceed.

### DISPOSITION

The WCAB's decision that Ordorica violated sections 4600 and 4601 is affirmed. The WCAB's decision as to the remedy is reversed. The matter is remanded for further proceedings consistent with this opinion.

Spencer, P. J., and Vogel (Miriam A.), J., concurred.

---

[12]In oral argument, Ordorica cited *Krueger v. Republic Indemnity Co. of America* (2000) 28 Cal. Workers' Comp. Rptr. 44 for the proposition that Title 8, section 9785, subdivision (b) is contradictory to section 4600 and thus invalid. However, *Tenet/Centinela* subsequently found Title 8, section 9785, subdivision (b) compatible with the statutory scheme, and although a WCAB panel decision is authority for the WCAB's interpretation unless clearly erroneous, the cases have no stare decisis effect on the Court of Appeal. (*Tenet/Centinela Hospital Medical Center v. Workers' Comp. Appeals Bd., supra,* 80 Cal.App.4th at pp. 1046-1048.)