[No. A131011. First Dist., Div. Three. Apr. 25, 2011.]

COCA-COLA ENTERPRISES INC. et al., Petitioners, v.
WORKERS' COMPENSATION APPEALS BOARD and ISAAC
ESPINOZA, Respondents.

810

**Counsel**

Bradford & Barthel and Louis A. Larres for Petitioners.

No appearance for Respondent Workers' Compensation Appeals Board.

DuRard, McKenna & Borg and Susan R. Borg for Respondent Isaac Espinoza.

OPINION

**JENKINS, J.**—Petitioners Coca-Cola Enterprises Inc. and Sedgwick CMS (Coca-Cola and Sedgwick; collectively, defendants) petitioned for review of an order by the Workers' Compensation Appeals Board (Board), in which the Board denied reconsideration of an award issued by a workers' compensation judge (WCJ). The WCJ awarded respondent Isaac Espinoza permanent disability (PD) benefits and imposed a penalty under Labor Code section 5814[1] for defendants' underpayment of temporary total disability (TTD) benefits.

Defendants claim the WCJ and the Board erred by (1) relying on an incorrect occupational group number in determining Espinoza's PD rating; (2) imposing a penalty under section 5814; (3) imposing "multiple" penalties on the same type of benefit (TTD); and (4) calculating the amount of the penalty.

■ We granted the petition, only as to one issue relating to the calculation of the penalty.[2] We now hold that the WCJ erred in calculating the penalty. Accordingly, we will annul the Board's decision on that point and direct modification of the award.

## I. TTD RATES AND PENALTIES FOR LATE PAYMENTS

■ Section 4653 provides that, when a worker is temporarily totally disabled, TTD benefits are payable in the amount of "two-thirds of the average weekly earnings during the period of such disability, consideration being given to the ability of the injured employee to compete in an open labor market." Section 4453, subdivision (a) specifies minimum and maximum limits on the amount of AWE's (average weekly earnings) that may be considered for purposes of this calculation. The limits are different for different time periods (see § 4453, subd. (a)), and the limits in effect on a worker's date of injury generally apply (§ 4453, subd. (d)). However, under section 4661.5, when any TTD payment is made two years or more after the date of injury, the amount of the payment is to be computed in accordance with the limits in effect on the date of payment, not the date of injury.

---

[1] All statutory references are to the Labor Code unless otherwise stated.

[2] Our decision not to issue a writ of review as to the remaining challenges raised by defendants reflects an implicit determination that they are without merit. (Cf. *In re Gay* (1998) 19 Cal.4th 771, 780, fn. 6 [80 Cal.Rptr.2d 765, 968 P.2d 476].) Accordingly, the petition is deemed summarily denied as to those issues, as of the date of finality of this opinion. (Cf. *In re Seaton* (2004) 34 Cal.4th 193, 196, fn. 2 [17 Cal.Rptr.3d 633, 95 P.3d 896]; *In re Cudjo* (1999) 20 Cal.4th 673, 700 [85 Cal.Rptr.2d 436, 977 P.2d 66].)

(§ 4661.5; see *Hofmeister v. Workers' Comp. Appeals Bd.* (1984) 156 Cal.App.3d 848, 852 [203 Cal.Rptr. 100] (*Hofmeister*).)

■ Section 4650, subdivision (d) provides for an automatic 10 percent penalty on a late TTD payment. In addition, section 5814 provides for a penalty for an unreasonable delay or refusal of benefits, including an unreasonable failure to pay at the correct rate. (§ 5814, subd. (a); see *Mote v. Workers' Comp. Appeals Bd.* (1997) 56 Cal.App.4th 902, 910–912 [65 Cal.Rptr.2d 806] [penalty for "failure to pay at the correct adjusted statutory rate of TTD"]; *Jardine v. Workers' Comp. Appeals Bd.* (1984) 163 Cal.App.3d 1, 4–5, 7–8 [209 Cal.Rptr. 139] [penalty for payment at permanent partial disability rate rather than permanent total disability rate]; *Smith v. Workers' Comp. Appeals Bd.* (2009) 74 Cal.Comp.Cases 984, 985.) Specifically, section 5814, subdivision (a) authorizes a penalty of up to 25 percent of the amount of the payment unreasonably delayed or refused, or up to $10,000, whichever is less;[3] this penalty is reduced by the amount of any penalty under section 4650, subdivision (d) on the same unreasonably delayed or refused benefit payment. (See § 5814, subd. (d).)

## II. FACTUAL AND PROCEDURAL BACKGROUND

On July 16, 2004, Espinoza, while employed by Coca-Cola, sustained an industrial injury to his shoulders. Coca-Cola was permissibly self-insured; its claims were adjusted by Sedgwick. At the time of his injury, Espinoza's AWE's were approximately $1,195.92 per week.

Espinoza received TTD benefits during two periods of TTD: (1) from February 7, 2005, through October 10, 2005 and (2) from October 9, 2006, through February 15, 2007. During both periods, he received benefits at the rate of $599.20 per week. On or after November 2, 2006 (i.e., during Espinoza's second period of TTD), Coca-Cola provided Sedgwick with a wage statement summarizing Espinoza's earnings. On March 21, 2007 (after both of Espinoza's periods of TTD had ended), Espinoza was paid a lump sum retroactively adjusting his benefit level for both TTD periods to $728 per week.

At a hearing before the WCJ, the parties submitted for decision the issues of Espinoza's level of PD and whether a penalty should be imposed for

---

[3] Section 5814, subdivision (a) provides: "When payment of compensation has been unreasonably delayed or refused, either prior to or subsequent to the issuance of an award, the amount of the payment unreasonably delayed or refused shall be increased up to 25 percent or up to ten thousand dollars ($10,000), whichever is less. In any proceeding under this section, the appeals board shall use its discretion to accomplish a fair balance and substantial justice between the parties."

underpayment of TTD. The parties submitted these issues on the basis of stipulations and documentary evidence; no testimony was presented. Among other issues, the parties stipulated that the TTD rate Espinoza initially should have received was $728 per week; the rate later should have increased to $797.32 per week.

The WCJ issued a ruling determining Espinoza's level of PD and imposing a penalty for the underpayment of TTD. In calculating the penalty, the WCJ divided defendants' payments into three time periods—the payments made during Espinoza's two periods of TTD and the retroactive adjustment payment made in March 2007. First, for Espinoza's first period of TTD (Feb. 7, 2005, through Oct. 10, 2005), the WCJ found Espinoza was entitled to $728 per week; the WCJ thus imposed a penalty of 25 percent of the difference between that amount and the lower amount paid ($599.20 per week). Second, for the later period of TTD (Oct. 9, 2006, through Feb. 15, 2007), the WCJ found Espinoza was entitled to increased TTD benefits; the WCJ imposed a penalty of 25 percent of the difference between $840 per week and $599.20 per week for the period from October 9, 2006, until the provision of the wage statement,[4] and 25 percent of the difference between $797.32 per week and $599.20 per week from the provision of the wage statement through February 15, 2007. Third, as to the March 2007 retroactive adjustment payment, the WCJ found that Espinoza was entitled to a retroactive adjustment to $797.32 per week rather than $728 per week; accordingly, she imposed a penalty of 25 percent of the difference between the retroactive adjustment payment made in March 2007 and the larger retroactive payment that should have been made.

The Board denied reconsideration. Defendants filed a timely petition for review.

We granted review, limited to the following question: In calculating the portion of the section 5814 penalty attributable to the period from October 9, 2006, until the provision of a wage statement, should the WCJ have based the penalty amount on (1) the difference between $840 per week (the maximum amount of TTD payable when the payments were made (see §§ 4453, subd. (a)(10), 4661.5)) and $599.20 per week (the amount paid), or (2) the difference between $797.32 per week (two-thirds of respondent Espinoza's AWE's (see § 4653)) and $599.20 per week?

---

[4] As we discuss in part III. below, the WCJ based this portion of the penalty on her conclusion that California Code of Regulations, title 8, section 10101.1 (regulation 10101.1) required payment of $840 per week prior to provision of the wage statement.

## III. DISCUSSION

### A. *Standard of Review*

The issue on which we granted review presents a question of whether the WCJ (whose opinion was adopted by the Board) correctly interpreted the governing statutes and regulations in calculating the penalty. We review such questions de novo (*Boehm & Associates v. Workers' Comp. Appeals Bd.* (1999) 76 Cal.App.4th 513, 515–516 [90 Cal.Rptr.2d 486]), although the Board's interpretation of a labor statute or regulation is entitled to great weight (*Smith v. Workers' Comp. Appeals Bd.* (2000) 79 Cal.App.4th 530, 537, fn. 2 [94 Cal.Rptr.2d 186] (*Smith*); *Ordorica v. Workers' Comp. Appeals Bd.* (2001) 87 Cal.App.4th 1037, 1049, fn. 12 [105 Cal.Rptr.2d 123] (*Ordorica*)).

### B. *Calculation of the Penalty*

Under section 4653, Espinoza was entitled to TTD benefits at the rate of two-thirds of his AWE's, subject to the limits in section 4453, subdivision (a). As noted above, at the time of his injury, Espinoza's AWE's were approximately $1,195.92 per week. Two-thirds of this amount, as agreed by the WCJ and the parties, is approximately $797.32 per week.

As the parties stipulated, during the first period of TTD, Espinoza's benefits were capped at $728, the maximum rate payable on his date of injury, July 16, 2004.[5] (See § 4453, subd. (a)(9).) However, under section 4661.5, for payments made more than two years after the date of injury, including (1) all payments made during Espinoza's second TTD period (Oct. 9, 2006, through Feb. 15, 2007) and (2) the retroactive adjustment payment made on March 21, 2007, the maximum rate payable was the rate in effect on the date of payment, which was at least $840 per week.[6] (See §§ 4453, subd. (a)(10), 4661.5; *Hofmeister, supra,* 156 Cal.App.3d at p. 852.) Because this maximum exceeded two-thirds of Espinoza's AWE's ($797.32), all payments made during these later periods should have been made at the rate of $797.32 per week. (See §§ 4653, 4661.5.)

The WCJ, however, concluded that, during the first portion of Espinoza's second TTD period (i.e., Oct. 9, 2006, until the provision of the wage statement), Espinoza was entitled to the maximum TTD rate of $840 per week, even though this exceeded two-thirds of his AWE's. The WCJ based

---

[5] Section 4453, subdivision (a)(9) specifies that, for injuries occurring on or after January 1, 2004, AWE's shall be taken at no more than $1,092; two-thirds of this amount is $728.

[6] Section 4453, subdivision (a)(10) provides that, after January 1, 2006, the maximum amount of AWE's is $1,260 or 1.5 times the state average weekly wage, whichever is greater; two-thirds of $1,260 is $840.

this conclusion on regulation 10101.1, which specifies certain materials that must be included in a claims administrator's claim files. Specifically, subdivision (j) of the regulation (regulation 10101.1(j)) requires that a claim file must contain "[d]ocumentation sufficient to determine the injured worker's [AWE's]," information that is necessary to calculate the worker's appropriate benefit level. Regulation 10101.1(j) then states that, "[u]nless the claims administrator accepts liability to pay the maximum temporary disability rate, including any increased maximum due under Labor Code section 4661.5, the information shall include" documentation relating to specific matters, such as tips, bonuses, earnings from concurrent employment, and, in some circumstances, the worker's earning capacity.[7]

The WCJ construed regulation 10101.1(j) to "require[] payment of TTD at the maximum statutory rate unless there is documentation in the claims adjuster's file supporting payment at a lower rate." Because Coca-Cola did not provide Sedgwick (the claims adjuster) with a wage statement documenting Espinoza's actual wages until at least November 2, 2006 (the date on the wage statement), the WCJ held that regulation 10101.1(j) required defendants to pay Espinoza the maximum statutory rate until the wage statement was received. The WCJ thus concluded that, for the period from October 9, 2006, until provision of the wage statement, defendants were obligated to pay $840 per week, the statutory maximum then in effect.[8] (Once the wage statement was received, the rate due was $797.32 (two-thirds of Espinoza's AWE's).)

[7] Regulation 10101.1 states in part: "The [claim] file shall contain but not be limited to: [¶] . . . [¶] (j) Documentation sufficient to determine the injured worker's [AWE's] in accordance with Labor Code sections 4453 through 4459. Unless the claims administrator accepts liability to pay the maximum temporary disability rate, including any increased maximum due under Labor Code section 4661.5, the information shall include: [¶] (1) Documentation whether the employee received the following earnings, and if so, the amount or fair market value of each: tips, commissions, bonuses, overtime, and the market value of board, lodging, fuel, or other advantages as part of the worker's remuneration, which can be estimated in money, said documentation to include the period of time, not exceeding one year, as may conveniently be taken to determine an average weekly rate of pay; [¶] (2) Documentation of concurrent earnings from employment other than that in which the injury occurred, or that there were no concurrent earnings, or of reasonable attempts to determine this information; [¶] (3) If earnings at the time of injury were irregular, documentation of earnings from all sources of employment for one year prior to the injury, or of reasonable attempts to determine this information. [¶] (4) If the foregoing information results in less than maximum earnings, documentation of the worker's earning capacity, including documentation of any increase in earnings likely to have occurred but for the injury (such as periodic salary increases or increased earnings upon completion of training status), or of reasonable attempts to determine this information."

[8] The WCJ also concluded that, for Espinoza's first period of TTD, regulation 10101.1(j) required payment of $728 per week (the statutory maximum on Espinoza's date of injury). However, this amount was due regardless of whether regulation 10101.1(j) requires payment at the maximum statutory rate. As discussed above, because two-thirds of Espinoza's AWE's totaled $797.32, he was entitled under the governing statutes to receive the statutory maximum of $728 per week during his first TTD period. (See §§ 4653, 4453, subd. (a)(9).)

Accordingly, in computing the portion of the section 5814 penalty attributable to the period from October 9, 2006, until the provision of the wage statement, the WCJ imposed a penalty of 25 percent of the difference between $840 per week and $599.20 per week (the amount paid).

■ We disagree with the WCJ's construction of regulation 10101.1(j). The regulation does not state that a worker is entitled to receive, or that an employer is obligated to pay, TTD at a rate higher than two-thirds of the worker's AWE's, the benefit level set by section 4653. Instead, as discussed above, regulation 10101.1(j) imposes recordkeeping requirements on claims adjusters; it does not purport to address the benefit levels owed to workers. The first sentence of regulation 10101.1(j) states a general requirement that a claim file contain documentation sufficient to determine the worker's AWE's. The subsequent portion of regulation 10101.1(j) states that, unless the claims adjuster accepts liability to pay the maximum TTD rate, the information in the file shall include specified categories of documents. But this portion of the regulation, upon which the WCJ apparently relied, does not state that an adjuster whose claim file does not contain all of the required documentation must pay the injured worker the maximum statutory rate regardless of the worker's actual earnings. The WCJ did not cite, and Espinoza does not present, any authorities construing regulation 10101.1(j) as imposing such a requirement.[9]

Here, Sedgwick did not accept liability to pay Espinoza the maximum rate for the period in question (Oct. 9, 2006, until provision of the wage statement), instead paying $599.20 per week, which it later retroactively increased to $728 per week. Under the second portion of regulation 10101.1(j), Sedgwick therefore was required to include the specified categories of documentation in its file, as part of its general obligation to maintain documentation sufficient to determine Espinoza's AWE's. If Sedgwick failed to maintain these categories of information (which the WCJ apparently inferred from the fact that Sedgwick did not yet have a wage statement), it may have breached its obligations under regulation 10101.1(j). But we find no basis for concluding that such a breach should result in an award to Espinoza of TTD benefits at a rate higher than the statutory rate of two-thirds of his AWE's.

This is especially so because the governing statutes already specify penalties for the delay or underpayment of TTD benefits. (See §§ 4650, subd. (d)

---

[9] As discussed above, section 4453, subdivision (a) modifies the general benefit level of two-thirds of AWE's, by setting minimum and maximum limits on the AWE's that may be considered in computing benefits. However, neither section 4453, subdivision (a) nor section 4653 states that a worker whose AWE's entitle him or her to a benefit level below the statutory maximum may nevertheless be entitled to receive the maximum, based on a claims adjuster's failure to maintain complete records.

[automatic 10 percent penalty for late TTD payment], 5814, subd. (a) [penalty for unreasonable delay or refusal of benefits].) If a claims adjuster fails to make appropriate payments because of insufficient documentation in the claim file, these penalties may apply. In addition, a violation of an administrative regulation (such as reg. 10101.1) by an insurer, self-insured employer, or third party claims administrator may result in administrative penalties, payable to the state. (See § 129.5, subds. (a)–(c), (i).) We decline to construe regulation 10101.1(j) as imposing what in effect would be an additional penalty, payable to the injured worker.

As noted above, the Board's interpretation of a labor statute or regulation ordinarily is entitled to deference. (*Smith, supra*, 79 Cal.App.4th at p. 537, fn. 2; *Ordorica, supra*, 87 Cal.App.4th at p. 1049, fn. 12.) However, in light of the detailed statutory scheme specifying both the levels of TTD benefits (see §§ 4653, 4453, subd. (a), 4661.5), and the penalties for failure to pay benefits as required (§§ 4650, subd. (d), 5814, subd. (a)), we decline to defer to the WCJ's interpretation of regulation 10101.1(j) as increasing the amount of TTD benefits due.

Because Espinoza was entitled to TTD benefits of $797.32 (rather than $840) per week during the period from October 9, 2006, until the provision of the wage statement (as well as during the remainder of his second TTD period), the portion of the section 5814 penalty attributable to that period should be recalculated.

### C. *Attorney Fees*

Espinoza requests an award of attorney fees under section 5801, which authorizes fees when "there is no reasonable basis" for an employer's petition for a writ of review. Because we have concluded that defendants correctly challenged the calculation of one portion of the penalty, we deny Espinoza's request for fees.

### IV. DISPOSITION

The Board's decision is annulled only as to the calculation of the portion of the section 5814 penalty attributable to the period from October 9, 2006, until the provision of a wage statement. In recalculating that portion of the penalty, the Board or the WCJ shall base the penalty amount on the difference between $797.32 per week and $599.20 per week. The Board's decision is otherwise affirmed. The petition for review is deemed summarily denied as to

all other issues raised in the petition, as of the date of finality of this opinion. Espinoza's request for attorney fees under section 5801 is denied. The parties shall bear their own costs on appeal.

McGuiness, P. J., and Pollak, J., concurred.